

Donald J. Sullivan, Esq.
Sullivan Law Offices, P.C.
P.O. Box 1854
Cheyenne WY 82003
(307) 634-0112
Attorney for Plaintiffs

FILED
DISTRICT OF WYOMING
CHEYENNE

2002 NOV -1  PM 5:28

CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROGER MacDONALD-EVOY and KATHLEEN MacDONALD-EVOY, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2001- CV-147-J |
| vs. | ) ) | |
| MARTIN L. TUBACH, M.D. | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFFS' WITNESS LIST

Plaintiffs reserve the right to call to testify in person at the trial of this action and or all of the following persons with respect to the topic areas described; each of the following persons, other than Plaintiff Roger MacDonald-Evoy, are "may call" witnesses for whose attendance at trial Plaintiff does not assume responsibility.

1. Plaintiff Roger MacDonald-Evoy will be called to testify to all relevant matters, including all matters covered in his deposition. He will describe his dealings with Defendant Tubach and the statements and assurances about the proposed

1

surgery made by Defendant, and the statements made by Defendant subsequent to the surgery. He will testify to the consequences to him of the injuries sustained in, and/or as a result of, the subject surgery; to the difficulties and limitations he experiences as a result of those injuries; to the constant and severe pain he experiences; to his inability to obtain or retain life insurance as a consequence of those injuries; to his difficulties in concentration, focus, attention, memory, distractibility, emotional flatness, impairment of interpersonal attachments and relationships, word-finding, and other higher or executive functions; to the adverse impacts on his life, his work, his personal life, his marriage and family relationships, and his enjoyment of life; to consequences suffered from the brain injury including double vision, loss of sense of smell, loss of and impairment to speech, loss of and impairment to balance/walking, pain in head/forehead, scarring and disfigurement, and all other relevant matters within his ken.

2. Michael Martin, M.D., 126 Quincy, Cheyenne WY 82001, may be called to testify, and if called testify generally to the topics and points in his deposition. He will describe his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and

into the brain and cranial cavity of the patient; and his recommendation that the patient be treated at the Barrows Neurosurgical Institute in Phoenix, Arizona, for repair of the problems; to the expenses incurred for the care rendered by him to the patient. He will describe the information which is normally and properly provided to patients for whom this surgery is being considered, both generally and in (as here) the revision context. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient and will describe and demonstrate the encephalomalacia; and to all other relevant matters within his ken.

3. George Guidry, M.D., 1950 Bluegrass Circle, Cheyenne WY 82009, may be called to testify, and if called will testify generally to the topics and points in his deposition. He will testify to his medical education, training and experience, his medical qualifications

and board certification, and his knowledge of and experience with this patient. He will describe his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; his conversations with Defendant about the likelihood of Defendant having penetrated the patient's skull base and the Defendant's denials thereof; his recommendation that the patient be treated at the Barrows Neurosurgical Institute in Phoenix, Arizona, for repair of the problems; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's

4

frontal lobe region with attendant significant permanent harm to the patient and will describe and demonstrate the encephalomalacia; and to all other relevant matters within his ken.

4. Maj. Steven Pflanz, M.D., Warren Air Force Base Hospital, Cheyenne WY, may be called to testify, and if called will testify generally to the topics and points in his deposition taken and/or to be taken by Defendant. He will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient. He will describe his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the seizure disorder or seizure phenomenon suffered by the patient as a result of the injury to his brain; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; his evaluation of the patient for purposes of retention in the military and his recommendation that the patient does not meet military eligibility criteria due to the frontal lobe brain injuries at issue in this case; to the probability that the patient will be involuntarily discharged from the Air National Guard due to these injuries; to the cognitive, personality, intellectual, functional and other limitations and problems created for the patient by or as a result of these injuries, and in particular by the

encephalomalacia. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient, and will describe and demonstrate the encephalomalacia. He will testify to his opinion that the patient has sustained major, permanent brain damage in the frontal lobe region of the brain, and that the injury has resulted and will continue to result in significant adverse alteration in the patient's ability to perform the higher or executive functions governed by the frontal lobes; to his opinion that the damage is permanent and life-altering; to his opinion that the patient will as a result experience diminished or flattened personality and affect, decreased impulse control, impairment of judgment and impairment of some aspects of memory, impairment of emotional connectivity and sensitivity, decreased or impaired metacognition, that the patient has developed anosagnosia, that he suffers from impairment in temporal organization of behavior, impairment in the ability of the frontal lobe region to process and to perform

6

frontal lobe functions, and other associated sequelae of frontal lobe brain damage. He will testify to his opinion that the frontal lobe brain damage suffered by the patient will adversely affect his ability to learn or perform new functions, to form new relationships both in his personal life and in his work life, and will adversely affect his ability to function and compete in the employment world. He will testify to his opinion that the frontal lobe brain damage results in the patient's suffering personality changes and decreased or absent empathy, with attendant impact on personal relationships; that his ability to sustain close or intimate personal relationships is markedly impaired thereby; that he suffers or is likely to suffer from a disinhibition syndrome, resulting in uncontrollable outbursts of anger and rage; and that he is otherwise adversely affected by the frontal lobe brain damage. He will explain that this patient's frontal lobe brain damage symptoms adversely affect his performance in the range of higher order functions and executive functions, that the patient has and will continue to have difficulty in accomplishing planning related to his intentions and in accomplishing the execution and implementation of plans, that the patient's ability to form and maintain interpersonal relationships is and will be impaired, and that he will continue to have difficulty working with others and particularly under conditions of stress. He will explain that the symptoms of frontal lobe brain damage such as those sustained by this patient typically become manifest over an extended period of time, that they are localized in this patient and therefor unlikely to improve but rather are likely to worsen as time goes by, and that in this patient they are permanent. He will testify to the reasonable value of, and the expenses incurred for, the care rendered by him to the patient; and all other relevant matters within his ken.

5. Andrew Shetter, M.D., Barrow Neurosurgical Group, 2910 North Third Ave., PNX AZ 85013, may be called to testify, and if called will testify generally to the topics and points in his deposition. He will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient. He will describe his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; to the cognitive, personality, intellectual, functional and other limitations and problems created for the patient by or as a result of these injuries, and in particular by the encephalomalacia; the reasonable value of, and the expenses incurred for, the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the

8

hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient and will describe and demonstrate the encephalomalacia; and to all other relevant matters within his ken.

6. Gerald McIntosh, M.D., 2121 E. Harmony Road, Fort Collins CO 80528, may be called to testify, and if called will testify generally to the topics and points covered or to be covered in his deposition which has been noticed to be taken by Defendant. He will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient. He will describe his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient during the subject surgery and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; to the cognitive, personality, intellectual, functional and other limitations and problems created for the patient by or as a result of these injuries, and in particular by the encephalomalacia; to the seizure disorder or seizure phenomenon suffered by the patient as a result of the injury to his brain; to the permanency of the injuries and damages sustained by the patient; to the patient's need for

9

permanent and ongoing medical and psychological care for the injuries, disabilities and conditions caused by the underlying surgery and the estimated nature, extent and expense thereof. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, caused leakage of cerebral spinal fluid (CSF), and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient. He will testify to his opinion that the patient has sustained major, permanent brain damage in the frontal lobe region of the brain, and that the injury has resulted and will continue to result in significant adverse alteration in the patient's ability to perform the higher or executive functions governed by the frontal lobes; to his opinion that the damage is permanent and life-altering; to his opinion that the patient will as a result experience diminished or flattened personality and affect, decreased impulse control, impairment of judgment and impairment of some aspects of memory, impairment of emotional connectivity and sensitivity, decreased or impaired metacognition, that the patient has developed anosagnosia, that he suffers from impairment in temporal

10

organization of behavior, impairment in the ability of the frontal lobe region to process and to perform frontal lobe functions, and other associated sequelae of frontal lobe brain damage. He will testify to his opinion that the frontal lobe brain damage suffered by the patient will adversely affect his ability to learn or perform new functions, to form new relationships both in his personal life and in his work life, and will adversely affect his ability to function and compete in the employment world. He will testify to his opinion that the frontal lobe brain damage results in the patient's suffering personality changes and decreased or absent empathy, with attendant impact on personal relationships; that his ability to sustain close or intimate personal relationships is markedly impaired thereby; that he suffers or is likely to suffer from a disinhibition syndrome, resulting in uncontrollable outbursts of anger and rage; and that he is otherwise adversely affected by the frontal lobe brain damage. He will explain that this patient's frontal lobe brain damage symptoms adversely affect his performance in the range of higher order functions and executive functions, that the patient has and will continue to have difficulty in accomplishing planning related to his intentions and in accomplishing the execution and implementation of plans, that the patient's ability to form and maintain interpersonal relationships is and will be impaired, and that he will continue to have difficulty working with others and particularly under conditions of stress. He will explain that the symptoms of frontal lobe brain damage such as those sustained by this patient typically become manifest over an extended period of time, that they are localized in this patient and therefor unlikely to improve but rather are likely to worsen as time goes by, and that in this patient they are permanent. He will testify to the reasonable value of, and the expenses incurred for, the care rendered by him to the

patient; and all other relevant matters within his ken.

7. Thomas Bennett, Ph.D., 1049 Robertson State., Fort Collins, CO 80524-3926, may be called to testify, and if called will testify generally to the topics and points covered or to be covered in his deposition which has been noticed to be taken by Defendant. He will testify to his education, training and experience, his qualifications and board certification as a neuropsychologist, and his knowledge of and experience with this patient. He will describe his care and treatment of the Plaintiff (including the treatment provided by members of his staff at the Brain Injury Recovery Program under his direction and supervision); his review of all the medical records and radiology films of the patient and the psychological and neuropsychological testing performed on the patient by him and his staff, by Dr. Kooken, and/or by others, and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia. He will describe the cognitive, personality, intellectual, emotional, functional and other limitations and problems created for the patient by or as a result of these injuries, and in particular by the encephalomalacia, which he will describe and demonstrate; to the seizure disorder or seizure phenomenon suffered by the patient as a result of the injury to his brain; to the permanency of the injuries and damages sustained by the patient; to the patient's need for permanent and ongoing medical and psychological care for the injuries, disabilities and conditions caused by the underlying surgery and the estimated nature, extent and expense thereof. He will testify to his opinion

that the patient has sustained major, permanent brain damage in the frontal lobe region of the brain, and that the injury has resulted and will continue to result in significant adverse alteration in the patient's ability to perform the higher or executive functions governed by the frontal lobes; to his opinion that the damage is permanent and life-altering; to his opinion that the patient will as a result experience diminished or flattened personality and affect, decreased impulse control, impairment of judgment and impairment of some aspects of memory, impairment of emotional connectivity and sensitivity, decreased or impaired metacognition, that the patient has developed anosagnosia, that he suffers from impairment in temporal organization of behavior, impairment in the ability of the frontal lobe region to process and to perform frontal lobe functions, and other associated sequelae of frontal lobe brain damage. He will testify to his opinion that the frontal lobe brain damage suffered by the patient will adversely affect his ability to learn or perform new functions, to form new relationships both in his personal life and in his work life, and will adversely affect his ability to function and compete in the employment world. He will testify to his opinion that the frontal lobe brain damage results in the patient's suffering personality changes and decreased or absent empathy, with attendant impact on personal relationships; that his ability to sustain close or intimate personal relationships is markedly impaired thereby; that he suffers or is likely to suffer from a disinhibition syndrome, resulting in uncontrollable outbursts of anger and rage; and that he is otherwise adversely affected by the frontal lobe brain damage. He will explain that this patient's frontal lobe brain damage symptoms adversely affect his performance in the range of higher order functions and executive functions, that the patient has and will

13

continue to have difficulty in accomplishing planning related to his intentions and in accomplishing the execution and implementation of plans, that the patient's ability to form and maintain interpersonal relationships is and will be impaired, and that he will continue to have difficulty working with others and particularly under conditions of stress. He will explain that the symptoms of frontal lobe brain damage such as those sustained by this patient typically become manifest over an extended period of time, that they are localized in this patient and therefor unlikely to improve but rather are likely to worsen as time goes by, and that in this patient they are permanent. He will testify to the reasonable value of, and the expenses incurred for, the care rendered by him and his group to the patient; and all other relevant matters within his ken.

8. Richard Orlandi, M.D., Division of Otolaryngology, University of Utah, 50 North Medical Drive, Suite 3C120, alt Lake City, UT 84132, may be called to testify, and if called will testify generally to the topics and points covered in his deposition. He will testify to his medical education, training and experience, his medical qualifications and board certification, and his review and knowledge of all of the medical records, history and radiological films on this patient. He will testify to his opinion that the care rendered by Defendant Tubach failed to meet and fell below the applicable standard of care, for the reasons and in the ways described in his deposition. He will testify to his opinion that the Defendant made a hole in the skull base of the patient, failed to realize what he had done or where he had done it, and further made one or more shafts into the brain parenchyma of the patient, and further placed a stent or tube into the hole he had made in the skull

14

base, mistaking its nature and location, and extended the stent into the dura, the cranial space and the brain of the patient. He will describe the information which is normally and properly provided to patients for whom this surgery is being considered, both generally and in (as here) the revision context. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient. He will testify to all other relevant matters within his ken.

9. Charles Braddock, M.D., Department of Medicine, Box 356429, University of Washington, 1959 NE Pacific Street, Seattle WA 98195-6429, may be called to testify, and if called will testify generally to his medical education, training and experience, his medical qualifications and board certification, and his specialization in the area of medical ethics and in particular the area of proper informed consent. He will testify to his review and knowledge of all of the medical records, history and radiological films on this patient. He

15

will testify to the Defendant's obligation to inform the patient in a full and meaningful way of all the important or significant risks of the procedure which the Defendant intended to perform, and the particular aspects of the patient's own condition and medical situation which made that procedure even more dangerous than it otherwise would be. He will testify to his opinion that Defendant was obligated to inform the patient that this surgery would be more complex and difficult as a result of the patient's prior sinus surgery, and that the surgeon would therefor be operating without landmarks on which he normally would rely to find his way; and that he knew he would be performing the surgery without the computer-guided technology which would have enabled the surgeon reasonably to find his way. He will testify to his opinion that the Defendant was obligated to inform the patient that, in the surgeon's own mind, physical injury to and destruction of the skull base and damage to and destruction of the actual tissue of the patient's brain were significant risks of the intended procedure, as were subarachnoid bleeding, penetration of the dura, blood clot and hematoma within the brain, air bubble formation within the brain, and permanent destruction of brain tissue by encephalomalacia. He will testify to his opinion that the Defendant failed to inform the patient honestly or meaningfully of these risks, which the surgeon himself now claims to have been prominent in his mind, and that in failing to inform the patient directly of these major and profoundly harmful attributes of the surgery the Defendant violated his duty to provide the patient with the requisite information on which a reasonable person could make a well informed decision about whether to undergo this elective procedure for a non-life-threatening procedure.

10. Patricia Pacey, Ph.D., 6688 Gunpark Drive, Boulder CO 80301. (303) 530-5333, may be called to testify, and if called will testify to her education, training and experience in the field of economics, and to the principles and techniques by which economists make determinations of past, present and future economic losses. Dr. Pacey will calculate, and express her opinions concerning, the economic losses and damages sustained by Plaintiff, and to be sustained by him in the future, as a consequence of the subject incident and his resulting disabilities. This will include the expenses of his medical and associated care to date, and the likely expense of his medical and associated care in the future; the expenses of his palliative and rehabilitative care to date and the likely expense of his palliative and rehabilitative care in the future; the loss of income sustained to date and the loss of income likely to be sustained in the future; and all other matters relating to the economic aspects of the losses and damages sustained and likely to be sustained in the future by Plaintiff. She will describe the methodology employed to determine the present value of the future losses, and will explain the interactions between and among interest rates, discount rates, and actual and projected life expectancy. She will testify to her findings, opinions and conclusions, as detailed in her economic report relating to Plaintiff Roger MacDonald-Evoy, and to the assumptions and bases on which she reached the same. She will testify to the details of her economic report, previously provided to Defendant, and to the details and contents of the underlying data, including the work and earnings history of Plaintiff, his prior income and tax returns, his diminished ability to compete in the economic marketplace and to gain and hold civilian employment appropriate to his education, training and experience; and to the present value of the

future income and future earning capacity which Plaintiff has lost and will lose as a consequence of the injuries sustained at the hands of Defendant; and to all other relevant matters within her ken.

11. William Hartwick, M.S., C.R.C., 9200 W. Cross Drive, Suite 514, Littleton CO 80123, may be called to testify, and if called will testify to his education, training and experience in the field of vocational rehabilitation, and to his review of Plaintiff Roger MacDonald-Evoy and his education, training and work experience and earning history; to his analysis of the employment opportunities and earning potential which Plaintiff enjoyed prior to the injuries sustained in and as a result of Defendant's surgery upon him, and the employment opportunities and earning potential which he now has in light of his injuries and disabilities. He will testify to his opinions that, prior to Defendant's surgery, Plaintiff would have been able to enter a second career at a substantial level of compensation, but that Plaintiff now cannot enter a comparable career or compete similarly in the job market, and will be unemployable at a level of function or compensation comparable to what he would have achieved but for these injuries. He will testify to the data on which he has formed his opinions. He will testify generally in conformity with his report on these topics, previously provided to Defendant. He will testify to all other relevant matters within his ken.

12. Plaintiff Kathleen MacDonald-Evoy may be called to testify, and if called will testify to the topics and matters addressed in her deposition, including without limitation the statements of Defendant about the mild risks of the proposed surgery and the

assurances given by Defendant about the surgery; to her knowledge and observations of Plaintiff Roger MacDonald-Evoy both before and after the surgery by Defendant, and to her observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, the ongoing severe pain and other physical indicia and sequelae describe in detail in the designation (above) for Plaintiff Roger MacDonald-Evoy; and to the adverse impact upon her and her life, and upon the relationships between the couple, and between him and his children, subsequent to Defendant's surgery; and to all other relevant matters within her ken.

13 - 15. Jerrod MacDonald-Evoy, Kellie MacDonald-Evoy, and Erin MacDonald-Evoy, the children of Plaintiffs, may be called to testify, and if called will testify to their knowledge and observations of Plaintiff Roger MacDonald-Evoy both before and after the surgery by Defendant, and to their observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, and the increase in confusion and distractibility; and to the adverse impact upon the relationships between them and their father subsequent to Defendant's surgery; to the problems, pain, difficulties and changes outlined in the designations (above) for their parents; and to all other relevant matters within their ken.

16. Karen Lewis, 211 Patetown Road, Goldsboro, North Carolina 27530, may be called to testify, and if called will testify that she is sister of Plaintiff Kathleen MacDonald-Evoy, and will testify to her knowledge and observations of Plaintiff Roger MacDonald-Evoy at and around the time of Defendant's surgery and her efforts to arrange for his treatment at the Barrows Neurosurgical Institute in Phoenix, Arizona; her admonitions and explanations to Plaintiffs about the significance of the patient's severe headaches under the postoperative conditions involved, and about the significance of the drainage of clear fluid from the patient's nose under the circumstances of this case. She will testify further to her knowledge and observations of Plaintiff Roger MacDonald-Evoy both before and after the surgery by Defendant, and to her observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, and the other indicia and sequelae detailed in the designations (above) for both Plaintiffs; and to her observations of the adverse impact upon the relationships between him and his wife and between him and his children subsequent to Defendant's surgery; and to all other relevant matters within her ken.

17 - 18. Janice and Tom Neely, P.O. Box 1512, Globe AZ 85501, 928-425-0677, may be called to testify, and if called will testify that they are the mother and step-father respectively of Plaintiff Kathleen MacDonald-Evoy, and will testify further to their knowledge and observations of Plaintiff Roger MacDonald-Evoy both before and after the surgery by Defendant, and to their observations of the radical changes in his personality

and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, and the other indicia and sequelae detailed in the designations (above) for both Plaintiffs; and to their observations of the adverse impact upon the relationships between him and his wife and between him and his children subsequent to Defendant's surgery; and to all other relevant matters within their ken.

19. Carrie Evoy, 6445 South Maple #2037, Tempe AZ 85283, may be called to testify, and if called will testify to her family relationship to Plaintiff Roger MacDonald-Evoy and her knowledge and observations of him both before and after the surgery by Defendant, and to her observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, and the other indicia and sequelae detailed in the designations (above) for both Plaintiffs and to all other relevant matters within her ken.

20. Beverly Francois, 55423 Murray Hill, Cheyenne WY 82009, may be called to testify, and if called will testify generally to the topics and points in her deposition taken by Defendant; she will describe her employment as the secretary to Plaintiff Roger MacDonald-Evoy at the Air National Guard, and to her knowledge and observations of him both before and after the surgery by Defendant, and to her observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening

of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, the decrease in ability to focus or perform tasks in the same manner and with the same skill, ease and ability as previously; to his frequent massive headaches and the impact they have on his job performance and even on his job attendance; and to all other relevant matters within her ken.

21. Dan Cirbo, 1163 Happy Jack Road, Cheyenne WY 82009, may be called to testify, and if called will testify generally to his employment in the Air National Guard, and to his knowledge and observations of Plaintiff Roger MacDonald-Evoy both before and after the surgery by Defendant, and to his observations of the radical changes in his personality and behavior, the outbursts of anger and rage, the flattening of personality, the loss of interpersonal skills and attachments, the impairment of memory, the increase in confusion and distractibility, the decrease in ability to focus or perform tasks in the same manner and with the same skill, ease and ability as previously; to his frequent massive headaches and the impact they have on his job performance and even on his job attendance; and to all other relevant matters within his ken.

22. John Babson, M.D., 1331 Prairie Ave. #1, Cheyenne WY 82009, may be called to testify, and if called will testify generally to his care and treatment of the Plaintiff before, during, after and since the involvement and the surgery of Defendant Tubach. He will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his

knowledge of the hypertension status of the patient at all relevant times and the treatment rendered therefor, and the permissibility of the treatment rendered and the consistency thereof with the patient's flight status; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; to his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his knowledge and observations of the changes in the patient and the patient's behavior as a result of the injuries in question; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

23. Michael Sloan, M.D., 800 E. 20th Street, Cheyenne WY 82001, may be called to testify, and if called will testify generally to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his provision of radiological care of the Plaintiff and his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other

24

relevant matters within his ken.

24. James G. Hubbard, M.D., 800 E. 20th Street, Cheyenne WY 82001, may be called to testify, and if called will testify generally to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his provision of radiological care of the Plaintiff and his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, caused leakage of cerebral spinal fluid (CSF), and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of

25

a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

25. David Simms, M.D., 333 East Virginia, Suite 101 , Phoenix AZ 85013, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient and that a stent was placed through the hole in the skull base and into the brain and cranial cavity of the patient; his participation in the treatment of the patient be treated at the Barrows Neurosurgical Institute in Phoenix, Arizona, for repair of the problems; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base and the stent placed into the hole by Defendant caused bleeding in the subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, caused

leakage of cerebral spinal fluid (CSF), and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole and stent, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

26. Robert Kooken, Ph.D., 701 E. Hampden, Englewood CO 80110, may be called to testify, and if called will testify generally to the topics and points covered in his deposition. He will testify to his education, training and experience, his qualifications and board certification as a neuropsychologist, and will describe his neuropsychological testing of the Plaintiff and his review of all the medical records and radiology films of the patient and the psychological and neuropsychological testing performed on the patient by him, by Dr. Bennett, and/or by others, and to the contents, meaning and significance thereof; his diagnosis and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia. He will describe the cognitive, personality, intellectual, emotional, functional and other limitations and problems created for the patient by or as a result of these injuries, and in particular by the encephalomalacia; to the seizure disorder or seizure phenomenon suffered by the patient as a result of the injury to his brain; to the permanency of the injuries and damages sustained by the patient; to the patient's need for permanent and ongoing medical and psychological care for the injuries, disabilities and conditions caused by the underlying surgery and the estimated nature, extent and expense

thereof. He will testify to his opinion that the patient has sustained major, permanent brain damage in the frontal lobe region of the brain, and that the injury has resulted and will continue to result in significant adverse alteration in the patient's ability to perform the higher or executive functions governed by the frontal lobes; to his opinion that the damage is permanent and life-altering; to his opinion that the patient will as a result experience diminished or flattened personality and affect, decreased impulse control, impairment of judgment and impairment of some aspects of memory, impairment of emotional connectivity and sensitivity, decreased or impaired metacognition, that the patient has developed anosagnosia, that he suffers from impairment in temporal organization of behavior, impairment in the ability of the frontal lobe region to process and to perform frontal lobe functions, and other associated sequelae of frontal lobe brain damage. He will testify to his opinion that the frontal lobe brain damage suffered by the patient will adversely affect his ability to learn or perform new functions, to form new relationships both in his personal life and in his work life, and will adversely affect his ability to function and compete in the employment world. He will testify to his opinion that the frontal lobe brain damage results in the patient's suffering personality changes and decreased or absent empathy, with attendant impact on personal relationships; that his ability to sustain close or intimate personal relationships is markedly impaired thereby; that he suffers or is likely to suffer from a disinhibition syndrome, resulting in uncontrollable outbursts of anger and rage; and that he is otherwise adversely affected by the frontal lobe brain damage. He will explain that this patient's frontal lobe brain damage symptoms adversely affect his performance in the range of higher order functions and executive functions, that

28

the patient has and will continue to have difficulty in accomplishing planning related to his intentions and in accomplishing the execution and implementation of plans, that the patient's ability to form and maintain interpersonal relationships is and will be impaired, and that he will continue to have difficulty working with others and particularly under conditions of stress. He will explain that the symptoms of frontal lobe brain damage such as those sustained by this patient typically become manifest over an extended period of time, that they are localized in this patient and therefor unlikely to improve but rather are likely to worsen as time goes by, and that in this patient they are permanent. He will testify to the reasonable value of, and the expenses incurred for, the care rendered by him to the patient; and all other relevant matters within his ken.

27. Roy Kanter, M.D., 5050 Powderhouse Road, Cheyenne WY 82009, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient by Defendant during the subject surgery; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base caused bleeding in the

subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, caused leakage of cerebral spinal fluid (CSF), and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

28. Dirk Dijkstal, M.D., 1300 E. 20th, Cheyenne WY 82001, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient by Defendant during the subject surgery; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base caused bleeding in the

subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

29. Daniel Johnson, M.D., 5050 Powderhouse, Cheyenne WY 82009, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient by Defendant during the subject surgery; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base caused bleeding in the

31

subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

30. Harmon H. Davis, M.D., 2301 House Ave., Cheyenne WY 82001, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient by Defendant during the subject surgery; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base caused bleeding in the

subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

31. Paul Filby, M.D., P.O. Box 2417, Cheyenne WY 82003, may be called to testify, and if called will testify to his medical education, training and experience, his medical qualifications and board certification, and his knowledge of and experience with this patient; and to his care and treatment of the Plaintiff; his review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; his diagnosis, treatment and prognosis for the patient; the nature and scope of the functions of various areas of the brain and in particular the functions affected by the patient's bilateral frontal encephalomalacia; his determination that a hole had been made in the skull base of the patient by Defendant during the subject surgery; and to the expenses incurred for the care rendered by him to the patient. He will testify to his opinion that the hole made by the Defendant in the skull base caused bleeding in the

subarachnoid space, caused bleeding in the brain parenchyma, caused damage to and destruction of brain tissue, caused and permitted the introduction into the brain of the patient of air and infectious agents and materials, and caused the formation, retention and enlargement of hematoma, blood clot, air bubble, pneumocele and encephalocele, and caused portions of the patient's brain to protrude down and out through the hole made by Defendant. He will testify to his opinion that the hole, and the injuries to the skull, dura, subarachnoid space and brain tissue resulting therefrom, caused the formation of a significant encephalomalacia, or area of dead or absent brain tissue, in the patient's frontal lobe region with attendant significant permanent harm to the patient; and to all other relevant matters within his ken.

32. Plaintiffs may also call one or more others of the various other physicians, nurses, therapists, physical therapists, speech therapists and other health care providers identified in any of the medical records of Plaintiff Roger MacDonald-Evoy to testify with respect to their observations of Plaintiff and his condition, their review of all the medical records and radiology films of the patient and to the contents, meaning and significance thereof; their diagnosis, treatment and prognosis for the patient; the diagnoses they made regarding him, the nature and extent of the treatment they provided for him, the expenses thereof, and their opinions that his conditions and the resulting requisite care were caused by the incident which is the subject matter of this action.

33. Any person whose deposition has been, or hereafter is, taken in this action.

34. Any person designated as a potential witness, or potential expert witness, by any party to this action, to testify to all relevant matters within his/her ken.

35. Any person whose testimony becomes relevant or necessary for purposes of rebuttal or impeachment, particularly but not limited to rebuttal of the Defendant's proposed France testimony; or otherwise to address matters not reasonably to be anticipated in advance of trial.

36. Any person whose testimony becomes relevant or necessary for purposes of establishing foundation for any record, bill, document or other exhibit.

plaining the

ROGER MacDONALD-EVOY and
KATHLEEN MacDONALD-EVOY,
Plaintiffs, by:

Donald J. Sullivan, Esq.
Sullivan Law Offices, P.C.
P.O. Box 1854
Cheyenne WY 82003
(307) 634-0112
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on November 1, 2002, I caused a true copy of the foregoing PLAINTIFFS' WITNESS LIST to be served by delivery upon defense counsel of record, in conformity with the Federal Rules of Civil Procedure, addressed as follows: J. Kent Rutledge, Esq., Lathrop & Rutledge, P.C.

Donald J. Sullivan, Esq.